**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FLOYD JENKINS, | Case No. 1:15-cv-01135-SKO |
| Plaintiff, | **ORDER RE PLAINTIFF'S SOCIAL SECURITY APPEAL** |
| v. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, Daniel Floyd Jenkins ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1381-83. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. FACTUAL BACKGROUND

Plaintiff was born on August 13, 1984, and alleges disability beginning on December 17, 2009. (Administrative Record ("AR") 37; 45; 231-49.) Plaintiff claims he is disabled due to

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6; 8.)

fibromyalgia, depression, anxiety, porphyria, and stress. (*See* AR 268.) In his application for disability insurance benefits, he alleged a disability onset date of December 17, 2009. (AR 243.) In his application for supplemental security income benefits, he alleged a disability onset date of August 1, 2010. (AR 231.) Plaintiff worked after both these dates. (AR 254, 260, 268, 275, 281, 292, 398.)

**A.     Relevant Medical Evidence**

On April 6, 2010, Plaintiff saw his treating rheumatologist Dr. Kyaw Khaing Swe, M.D. (AR 656-70.) Dr. Swe emphasized the "benign nature" of fibromyalgia and the "importance of exercise and physical activities," and explained to Plaintiff that "the great majority of patients live normal and active lives." (AR 659-70.) On July 9, 2010, Dr. Swe saw Plaintiff for follow-up and found his fibromyalgia symptoms "still mild to moderately active" but "not worsened." (AR 704.) Dr. Swe explained that Plaintiff "need[ed] to stay active for fibromyalgia" and informed him that "[p]lacing him on disability for an extended period w[ould] only worsen the condition" and "[documentation of medical impairment] w[ould] not be extended." (AR 704.)

On June 15, 2011, Plaintiff underwent a consultative examination by psychologist Dr. Benjamin Aleshire, Ph.D. (AR 832-37.) Plaintiff was able to ambulate without assistance, was friendly and made good eye contact, and had normal facial expressions throughout the interview. (AR 832-34.) Plaintiff's gross motor function was normal, his behavior was appropriate, his grooming was good, and he interacted appropriately with Dr. Aleshire and the office staff during the evaluation. (AR 832-35.) Plaintiff reported that he had been depressed since childhood but was not participating in mental health treatment and was not taking psychiatric medications. (AR 832-33.) Plaintiff reported completing normal living activities, including showering, cleaning, washing clothing, and preparing simple meals, though he needed to take several breaks to have enough energy to complete tasks. (AR 834.) Plaintiff also reported attending special education classes for speech problems and concentration difficulties, though he completed the 11th grade and eventually earned his GED. (AR 833.) Mental status examination did not reveal any abnormalities or psychiatric findings. (AR 834-35.) Plaintiff described his current mood as "irritable" and presented as dysthymic with a constricted range of affect. (AR 835.)

2

Dr. Aleshire diagnosed Plaintiff with major depressive disorder, recurrent and moderate; rule out mood disorder due to porphyria; and assigned Plaintiff a GAF[2] score of 55. Dr. Aleshire opined Plaintiff was "able to accurately" perform one- or two-step simple repetitive tasks and accurately perform complex tasks; has a "good ability" to accept instructions from supervisors and interact with coworkers and the public, perform work activities on a consistent basis without special or additional instruction, and maintain regular attendance; and was "moderately impaired" in his ability to complete a normal workday or workweek without interruptions from a psychiatric condition and to deal with the usual stressors encountered in a competitive workplace.  (AR 836).

On June 18, 2011, Plaintiff saw Dr. Ashraf Youssef, M.D., for an internal medicine consultative examination.  (AR 838-42.)  Dr. Youssef diagnosed Plaintiff with porphyria and fibromyalgia and opined that Plaintiff had no exertional limitations.  (AR 841.)

On July 21, 2011, psychiatric medical consultant Dr. Kwong W. Law, M.D., reviewed the medical records and completed a psychiatric review technique form.  (AR 843-57.)  Dr. Law opined Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, but was otherwise not significantly limited.  (AR 843-44.)  Dr. Law further opined Plaintiff was able to understand and remember short and simple instructions; sustain concentration and persistence to carry out short, simple tasks, and maintain regular attendance and perform work activities for a normal work week and/or workday; interact appropriately with supervisors and coworkers but with difficulty with the public; adapt to normal work setting and hazards; and set realistic goals and work independently.  (AR 843-44.)

Dr. Law opined Plaintiff was moderately restricted in his activities of daily living and had moderate difficulties in maintaining social functioning and concentration, persistence, and pace, but noted no repeated episodes of decompensation.  (AR 854.)  Dr. Law only partially credited Plaintiff's subjective testimony, concluding Plaintiff was able to perform simple repetitive tasks

---

[2]  Global Assessment of Functioning (GAF) scale score is a numeric scale (1 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. Diagnostic and Statistical Manual of Mental Disorders IV, American Psychiatric Association (4th ed. 2000) at 34.

but would have difficulty performing complex tasks; was able to sustain adequate concentration, persistence, and pace and complete a normal workday and workweek; would have difficulty interacting with the public; was able to interact appropriately with coworkers and supervisors; and was able to respond appropriately to changes in the work setting. (AR 856-57.)

On August 8, 2011, State agency physician Dr. James J. Green, M.D., reviewed the medical records and assessed Plaintiff's physical functionality. (AR 864-71.) Dr. Green diagnosed Plaintiff with history of borderline porphyria, with a secondary diagnosis of history of fibromyalgia, and opined that Plaintiff had no exertional limitations. (AR 864-65.) Dr. Green only partially credited Plaintiff's subjective testimony, noting, "[m]any of his statements seem out of proportion to the objective medical evidence." (AR 869.)

On January 15, 2013, treating physician Dr. Jan Mensink, M.D., saw Plaintiff for upper respiratory tract infection symptoms. (AR 892.) Dr. Mensink noted that Plaintiff did not smoke cigarettes but smoked marijuana, and was currently using only marijuana and no other active medications. (AR 892.) On February 15, 2013, Dr. Mensink noted Plaintiff's long-term history of fibromyalgia, porphyria, and marijuana use and observed that Plaintiff had not taken any medication for years and that he smoked marijuana daily. (AR 891.)

**B.     Testimony**

   **1.     Plaintiff's Testimony at Hearing**

Plaintiff testified that he felt as though someone was taking a knife and twisting it into his stomach, and that the muscles in his arms, legs, and chest were contracting and moving by themselves like spasms, which "hurt very bad." (AR 82.) He "get[s] out of breath really easily" and the skin on his arms and legs are "very sore." (AR 82.) He has "a hard time doing things, just household chores. It might take three to four hours to do -- to clean the kitchen, which is you know, unload the dishwasher and load it." (AR 82.) It is hard for him to do repetitive tasks, he must lie down and take naps daily, and sometimes he will sleep for 18 hours, "nonstop." (AR 82.) His "skin is crawling 24/7" and he is unable to sleep soundly because of his pain. (AR 92.)

Plaintiff testified that he can lift up to twenty pounds at a time, though "[i]t depends on a day-to-day basis." (AR 83.) He can stand for five or ten minutes before needing to sit, walk for

five to ten minutes at a time, and sit for 30 minutes before needing to stretch and walk around. (AR 83.) He tries to read, but "can't concentrate on things for a long period of time." (AR 84.) He spends an hour or two on a computer each day and plays a video game, World of Warcraft, for two to three hours each day. (AR 84-92.) He described his daily activities as including stretching, sweeping and vacuuming, doing laundry, preparing simple meals, using a computer, and playing video games. (AR 83-85, 90.) He spends four to five hours laying down each day. (AR 104.) He hasn't played World of Warcraft for "a couple years now" because he cannot afford the subscription and is unable to sit still long enough to enjoy it. (AR 106.)

### 2. Plaintiff's Wife's Testimony at Hearing

Michelle Jenkins, Plaintiff's wife, testified that Plaintiff "gets very ill and experiences vomiting on almost a daily basis," "sleeps excessively because he doesn't get restful sleep," and "gets very sore muscles and sore skin." (AR 93.) Plaintiff is unable to help with household chores because "he's just too tired and too sore." (AR 93.) Mrs. Jenkins is "responsible for 95 to 99 percent of all of the housework, all of the chores, all of the errands, working, earning money to support the family" and expressed frustration with "just seeing him deteriorate continuously over time, it just keeps getting worse." (AR 95.) She testified she had seen Plaintiff go from being a welder and heavy duty mechanic and working 16-hour days to losing his job because he would get overheated and would get sick and would have to come inside the office to recuperate, to work in an office, to "not being able to work in an office." (AR 96.) The constant vomiting is a symptom of Plaintiff's porphyria. (AR 100.)

Though Plaintiff takes Prozac to help with his symptoms, Mrs. Jenkins testified she hadn't noticed any difference in his attitude and ability "to do anything.' (AR 94.) She testified she was frustrated that Plaintiff spends about three hours a day playing video games, so that he "was sleeping excessively and [ ] when he was awake, this was what he was doing." (AR 94.) On his best days, Plaintiff "could sit for maybe an hour and a half at a time" before needing a break, but on his bad days he would not be able to spend more than an hour sitting and concentrating on the game before needing to nap or lay down for an hour. (AR 97.) Even at his best, "[i]t's not like he could take a 15-minute break to get up and stretch and sit back down." (AR 97.) She also

testified that she felt like World of Warcraft was Plaintiff's "only social outlet" and that because he can't leave the house, "talking over the Internet was his social interaction." (AR 99.)

### 3. Vocational Expert Testimony at Hearing

The Vocational Expert ("VE") testified that Plaintiff has past relevant work as a collection clerk, Dictionary of Occupational Titles ("DOT") 241.357-010, sedentary work with an SVP[3] of 5 that was performed as light work; check cashier, DOT 211.462-026, sedentary work with an SVP of 3; warehouse manager, DOT 184.167-114, light work with an SVP of 8; arc welder, DOT 810.384-014, heavy work with an SVP of 5; construction equipment mechanic, DOT 620.261-022, medium work with an SVP of 7; and driver[4], DOT 359.673-010, light work with an SVP of 3. (AR 107-09.)

The ALJ asked the VE whether a hypothetical individual capable of lifting 20 pounds, sitting, standing, and walking for six hours out of an eight-hour day, limited to simple, repetitive tasks, and precluded from working in extreme hot or cold weather would be able to work. (AR 109.) The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform other jobs in the national economy including representative occupations furniture rental consultant, DOT 295.357-018, light work with an SVP of 2, usher, DOT 344.677-014, light work with an SVP of 2, and surveillance system monitor, DOT 379.367-010, sedentary work with an SVP of 2. (AR 109-11.)

The ALJ then asked the VE to consider a hypothetical individual with the same postural and environmental limitations as the first hypothetical, but without the limitation to simple, repetitive tasks. (AR 111.) The VE testified such an individual could perform Plaintiff's past relevant work as a check cashier, DOT 211.462-026, sedentary work with an SVP of 3. (AR 111.)

Plaintiff's attorney asked the VE to consider an individual only able to stand, walk, and sit for less than two hours out of an eight-hour day; the VE testified such an individual would be unable to work. (AR 112-13.) Plaintiff's counsel then asked the VE whether an individual who

---

[3] Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

[4] Plaintiff's work as a driver did not last long enough to constitute substantial gainful activity. (AR 111.)

6

must lie down for at least an hour beyond the normal work breaks would be able to work; the VE testified such an individual could not work. (AR 113.)

## C. Administrative Proceedings

On July 15, 2013, the ALJ issued a written decision and found that Plaintiff had severe impairments of porphyria, fibromyalgia, and depression. (AR 39.) The ALJ determined that these impairments did not meet or equal a listed impairment. (AR 39-40.) The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he is limited to lifting twenty pounds; to sitting, standing, and walking for six hours each out of an eight hour day; to simple repetitive tasks; and is precluded from working in an environment with excessive heat or cold. (AR 40.)

Given this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work. (AR 45.) After considering Plaintiff's age, limited education, work experience and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, including representative occupations furniture rental consultant, DOT 295.357-018, light work with an SVP of 2; usher, DOT 344.677-014, light work with an SVP of 2; and surveillance system monitor, DOT 379.367-010, sedentary work with an SVP of 2. (AR 45-46.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (AR 46-47.)

The Appeals Council denied Plaintiff's request for review on December 29, 2014, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. (AR 6-10.)

## D. Plaintiff's Complaint

On July 21, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ erred by silently rejecting the medical opinion of consultative examiner Dr. Aleshire and in discrediting Plaintiff's subjective fibromyalgia testimony. (Doc. 14.)

## III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599,

601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In Step 1, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ must determine at Step 2 whether the claimant has a severe

impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, the ALJ moves to Step 3 and determines whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is therefore presumptively disabled. *Id.* §§ 404.1520(d), 416.920(d). If not, at Step 4 the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

Plaintiff contends the ALJ erred in silently rejecting portions of psychological consultative examiner Dr. Aleshire's opinion and by discounting Plaintiff's credibility. (Docs. 14; 16.)

### A.   The ALJ's Consideration of the Medical Evidence

Plaintiff contends the ALJ erred by refusing to credit a portion of Dr. Aleshire's opinion without providing any legitimate or specific reason for doing so. Plaintiff argues Dr. Aleshire found him moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and moderately limited in the ability to deal with the usual stressors encountered in a competitive workplace, but the ALJ ignored these moderate limitations in formulating Plaintiff's RFC and did not address Dr. Aleshire's opinion in this regard at all. The Commissioner responds that the ALJ properly accommodated Dr. Aleshire's opinion in his RFC assessment by limiting Plaintiff to simple, repetitive tasks.

Dr. Aleshire noted that Plaintiff "displayed no difficulty" with concentration, persistence, and pace and assigned Plaintiff a GAF score of 55 (AR 835), indicating Plaintiff had "*moderate* symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR *moderate* difficulty in social, occupational, or school functioning." (DSM-IV at 34 (emphases added). Dr. Aleshire further opined Plaintiff's mental health functioning appeared "moderately impaired" due

to his medically determinable depression impairment, but that were Plaintiff to participate in mental health treatment, it was "likely that his symptoms would decrease in severity if he did so." (AR 835-36.) Finally, Dr. Aleshire opined that Plaintiff was "moderately impaired" in his ability to complete a normal workday or work week without interruptions from his psychiatric condition and in his ability to deal with the usual stressors encountered in a competitive workplace. (AR 836.) Agency psychiatric consultant Dr. Law reviewed the record -- including Dr. Aleshire's opinion -- and determined that, despite moderate limitations with social functioning and concentration, persistence, and pace, Plaintiff was able to perform simple, repetitive tasks without restrictions on his ability to complete a normal workday and workweek, interact appropriately with coworkers and supervisors, and respond appropriately to changes in the work setting. (AR 854-57; *see* AR 44.) *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (the opinions of non-examining physicians "may constitute substantial evidence when it is consistent with other independent evidence in the record"). The ALJ therefore incorporated a limitation to simple, repetitive tasks in his RFC assessment to address these restrictions in Plaintiff's mental health functioning. (AR 400.)

The Ninth Circuit has determined the limitation to unskilled work adequately encompasses a claimant's "moderate mental residual functional capacity limitations." *See, e.g., Thomas v. Barnhart*, 278 F.3d 948, 953, 955 (9th Cir. 2002). Specifically, the Court has repeatedly concluded the limitation to "simple, routine, repetitive" tasks accommodates findings that the claimant had a "slow pace" and "several moderate limitations in other mental areas." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008); *see also Sabin v. Astrue*, 337 Fed. App'x 617, 620-21 (9th Cir. 2009) (finding the ALJ properly assessed medical evidence when finding -- despite moderate difficulties as to concentration, persistence, or pace -- the claimant could perform simple tasks on a consistent basis).

The Ninth Circuit has similarly concluded a limitation to simple tasks adequately encompasses moderate limitations with social functioning. *See Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x 15 (9th Cir. 2012) (holding that an RFC for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless

10

adequately accounted for such limitations); *see also Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016); *Langford v. Astrue*, No. CIV S-07-0366-EFB, 2008 WL 2073951 at *7 (E.D. Cal. May 14, 2008) ("unskilled work . . . accommodated [the claimant's] need for 'limited contact with others'"); SSR[5] 85-15. Although Plaintiff contends the ALJ improperly rejected portions of Dr. Aleshire's opinion, the restriction to simple tasks adequately encompasses Plaintiff's moderate limitations both with dealing with stressors encountered in a competitive workplace and with completing a normal workday.

A claimant's low tolerance for stress or moderate limitations in dealing with changes in the workplace are encompassed in a residual functional capacity of simple, repetitive tasks. *See, e.g., Keller v. Colvin*, No. 2:13-cv-0221-CKD, 2014 WL 130493 at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the plaintiff required "low stress settings" by limiting the plaintiff to simple tasks, "equating to unskilled work"); *Acuna v. Colvin*, No. EDCV-14-2404-AGR, 2015 WL 7566624, at *2 (C.D. Cal. Nov. 24, 2015), *judgment entered*, No. EDCV 14-2404 AGR, 2015 WL 7566947 (C.D. Cal. Nov. 24, 2015) (finding the plaintiff did not "show a moderate limitation in his ability to respond appropriately to changes in the work setting would preclude him from performing simple, routine tasks"); *Longston v. Calvin*, No. 1:14-cv-01905-MC, 2015 WL 7761065 at *3 (D. Or. Dec. 1, 2015) (finding "moderate mental limitation in responding appropriately to changes in the work setting" were encompassed in a limitation to unskilled, simple tasks). In sum, Dr. Aleshire's opinion that Plaintiff is moderately impaired in his ability to deal with stressors in the workplace is adequately addressed by the ALJ's RFC assessment.

Further, moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms do <u>not</u> preclude a finding of non-disability. *Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007). In fact, "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with

---

[5] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006).

and properly captured by a limitation to simple repetitive tasks." *Rodriquez v. Colvin*, No. 1:13-CV-01716-SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015); *McLain v. Astrue*, No. SACV-10-1108-JC, 2011 WL 2174895, at * (C.D. Cal. June 3, 2011); *Stubbs-Danielson*, 539 F.3d at 1171 (limitation for simple, repetitive tasks adequately captured physician opinion that the claimant had moderate limitations in concentration, persistence, and pace).

The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, *see Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001), and is required to formulate the RFC based on the *entire* record, 20 C.F.R. § 404.1545(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical courses, as well as observations by family members and the claimant's own subjective symptoms). In considering Plaintiff's mental abilities and limitations, the ALJ gave significant weight to the opinion of agency psychiatric consultant Dr. Law, who had specifically opined Plaintiff could perform simple, repetitive tasks, maintain regular attendance and complete a normal work week and/or workday, and respond appropriately to changes in the work setting. (AR 44, 843-57.)

Based on this evidence, as well as other testimony and evidence in the record, the ALJ concluded Plaintiff retains the ability to complete simple repetitive tasks. (AR 14.) Plaintiff's difficulties with completing a workday and dealing with stressors in the workplace were included in the ALJ's RFC when she imposed the restriction of simple, routine tasks. *Sabin v. Astrue*, 337 F. App'x 617, 621 (9th Cir. 2009) (finding the ALJ properly "determined the end result of [plaintiff's] moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks"); *see also Stanley v. Astrue*, No. 1:09-CV-1743 SKO, 2010 WL 4942818, at *5 (E.D. Cal. Nov. 30, 2010) ("in limiting Plaintiff to simple, repetitive tasks, the ALJ properly incorporated in his RFC finding [the doctor's] opinion that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace").

Though Plaintiff is correct the ALJ was silent as to the weight accorded to these specific limitations, the ALJ was not required to individually reference the moderate limitations Dr. Aleshire listed in his evaluation, *see Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ does not need to discuss every piece of evidence when interpreting the record), where the

1  ALJ noted the agency opinion of Dr. Law and expressly adopted the limitation for simple
2  repetitive tasks to address Plaintiff's mental health functioning.  Plaintiff has not pointed to any
3  ambiguities in the record or other evidence contradicting the RFC assessment, because there are
4  none.  Dr. Aleshire's opinion that Plaintiff is moderately limited in his ability to complete a
5  normal workday and deal with stressors in the workplace is not contradicted by the ALJ's RFC
6  assessment, as Dr. Aleshire also explicitly opined Plaintiff retained the mental ability to perform
7  both simple and complex tasks and maintain regular attendance in the workplace with little
8  supervision.  (AR 836.)  To the extent there was any ambiguity between Dr. Aleshire's narrative
9  of Plaintiff's abilities and the other medical opinion evidence, the ALJ was entitled to resolve it
10 based on an assessment of all the evidence.  *See Lewis*, 236 F.3d at 509 (ALJ resolves conflicts
11 and ambiguities in the evidence).

12         Even if the ALJ should have more specifically addressed Plaintiff's moderate limitation in
13 maintaining social functioning, the ALJ's failure to do so was harmless given that the limitation to
14 simple, repetitive tasks adequately addressed both Dr. Aleshire's opined moderate limitations and
15 led to the conclusion that Plaintiff could perform the requirements of light work.  *See Carmickle v.*
16 *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless where
17 there "remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the
18 error does not negate the validity of the ALJ's ultimate [credibility] conclusion") (internal citation
19 and quotations omitted) (alteration in original); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th
20 Cir. 2008) (harmless error exists when it is clear that the ALJ's error was inconsequential to the
21 ultimate non-disability determination) (citations and quotations omitted); *see also Batson v.*
22 *Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding error harmless
23 where it did not negate the validity of the ALJ's ultimate conclusion).

24         In sum, the ALJ did not err in his assessment of Plaintiff's mental health functioning.

25 **B.    The ALJ's Consideration of Testimony**

26         Plaintiff contends the ALJ failed to articulate clear and convincing reasons for discounting
27 his statements regarding the severity and extent of his ongoing symptoms.  (Docs. 14; 16.)  The
28 Commissioner contends the ALJ properly relied on evidence in the record that undermined the

credibility of Plaintiff's subjective complaints. (Doc. 15.)

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

The ALJ also may consider (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1041; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. §§ 404.1529, 416.929. "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039.

The ALJ reviewed the medical record and Plaintiff's allegations that he is unable to perform all work due to her alleged impairments and other symptoms. (AR 41-44.) The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 43.) The ALJ found that

> . . . Despite his alleged impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction as noted above, and some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. [Plaintiff]'s ability to participate in such activities undermines the credibility of his allegations of disabling functional limitations.

14

(AR 43.)

Here, the ALJ properly discounted Plaintiff's credibility on the basis of his inconsistent statements regarding his ability to engage in some degree of daily activity. (AR 43.) *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.(c(3)(i) (daily activities are relevant to assessing whether a claimant's statements are true); SSR 96-7p (same); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). "The importance of the credibility of subjective complaint is underscored where, as here, the underlying condition is one that defies objective clinical findings." *Calkosz v. Colvin*, No. C-13-1624-EMC, 2014 WL 851911 at *5 (N.D. Cal. Feb. 28, 2014). However, in discounting a plaintiff's credibility, the ALJ may still rely on ordinary indicators of credibility, including inconsistencies in the record in evaluating a plaintiff's subjective complaints. *Smolen*, 80 F.3d at 1284; *Moisa*, 367 F.3d at 885; *Thomas*, 278 F.3d at 958-59; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJs may consider whether the Plaintiff's testimony is believable or not).

While the mere fact that a claimant engages in certain daily activities does not necessarily detract from his credibility as to overall disability, daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Thomas*, 278 F.3d at 959. A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson*, 539 F.3d at 1175; *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959. Plaintiff's admitted daily activities, including stretching, sweeping, vacuuming, doing laundry, preparing simple meals, using a computer, and playing World of Warcraft for more than two hours a day, suggest he is capable of performing the requirements of a reduced range of light work. *Thomas*, 278 F.3d at 958-59 (the claimant's ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping" suggested the ability to perform a reduced range of light work); *Light v. Soc. Sec. Admin.*, 119

F.3d 789, 792 (9th Cir. 1997); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

The ALJ also did not err in discounting Plaintiff's credibility based on his admitted social interactions. (AR 43.) *Burch*, 400 F.3d at 680 (the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record "suggest[ed] that she is quit functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and her boyfriend"); *McIntire v. Colvin*, No. 1:14-CV-00036-SKO, 2015 WL 4662411, at *17 (E.D. Cal. Aug. 5, 2015). As discussed above, Plaintiff contends the ALJ erred by failing to include a more restrictive social functioning limitation in his RFC assessment, due to his "moderate" limitations in social functioning. (Doc. 14, p. 7.) However, the ALJ specifically found that Plaintiff's admitted social interactions, including being married, having social visits with friends, and playing immersive video games with others, undermined his allegations of more restrictive limitations in social functioning. (AR 43.) Plaintiff's social functioning and ability to maintain longstanding relationships, including six years of marriage, was a permissible reason on which the ALJ could base his credibility determination. *Burch*, 400 F.3d at 680.

In sum, the ALJ did not err in finding Plaintiff less than fully credible based on his "somewhat normal level of daily activity and [social] interaction." *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir.2009) (ALJ properly recognized that daily activities "did not suggest [the claimant] could return to his old job" but "did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated").

Finally, Plaintiff contends the ALJ erred in failing to evaluate Plaintiff's credibility in light of his medically determinable fibromyalgia impairment. (Doc. 14, pp. 7-11.) However, it is unclear how Plaintiff's testimony as to his fibromyalgia impairment, which was *not* discredited, in any way affected the ALJ's RFC assessment. (*See* AR 40-45.) The ALJ incorporated a limitation of lifting no more than twenty pounds at a time into the RFC based on Plaintiff's testimony he could lift twenty pounds. (AR 41; 83.) There is no evidence in the record, either medical opinion or testimony, that Plaintiff is further limited. (*See* AR 41-44; 82-84; 659-70; 704; 832; 841; 865.) Plaintiff has not demonstrated how a limitation to light work failed to fully address the restrictions imposed by his fibromyalgia. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (the ALJ

properly discounted plaintiff's allegations where no doctor "expressed the opinion that [plaintiff] was totally disabled" or implied that he "was precluded from *all* work activity"); *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) (the party attacking the agency's determination bears the burden of proving any error was harmful). Thus, Plaintiff's contention lacks merit.

Even to the extent that Plaintiff's testimony was "somewhat equivocal about how regularly [he] was able to keep up with all of these activities, and the ALJ's interpretation of h[is] testimony may not be the only reasonable one[. . . .] it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Stubbs-Danielson*, 539 F.3d at 1175 (citing *Fair*, 885 F.2d at 604); *see also Thomas*, 278 F.3d at 954 (where "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld[,]"); *Andrews*, 53 F.3d at 1041. (*See, e.g.,* AR 65 (testifying at the hearing that her symptoms are severe "to the point where I have days I can't even get up or I don't want to deal with anything").) Just because there is more than one way to reasonably interpret the evidence in the record does not mean that the ALJ committed reversible error. *See, e.g., Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

In sum, the ALJ did not err in his evaluation of Plaintiff's credibility.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Daniel Floyd Jenkins.

IT IS SO ORDERED.

Dated: __**August 1, 2016**__                              /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE